## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER CASTORINA and STEVEN MORSE, <br><br> Plaintiffs, <br><br> v. <br><br> SPIKE CABLE NETWORKS, INC., NETWORK ENTERPRISES, MTV NETWORKS, VIACOM, INC., INDUSTRY ENTERTAINMENT, CBS CORPORATION ABC CORPORATIONS, 1-10 fictitious (corporations); XYZ CORPORATIONS, 1-10 (fictitious corporations); ABC TALENT AGENCIES, (fictitious agencies); XYZ TALENTAGENCIES, 1-10 (fictitious agencies); TALENT AGENTS JOHN DOES 1-10 (fictitious agents); TALENT AGENTS JANE DOES 1-10, (fictitious agents). <br><br> Defendants. | Civil Case No: <br><br> **COMPLAINT** <br> **Jury Trial Demanded** <br><br> FILED <br> IN CLERK'S OFFICE <br> U.S. DISTRICT COURT E.D.N.Y. <br><br> ★ JUN 28 2010 ★ <br><br> LONG ISLAND OFFICE <br><br> SEYBERT, J. <br><br> LINDSAY, M. |

Plaintiffs, Christopher Castorina and Steven Morse, by and through their attorneys, DeJesu Maio & Associates, allege, upon knowledge as to themselves and their own actions and upon information and belief as to all other matters, as follows:

### JURISDICTION AND VENUE

1. This is a civil action seeking damages against defendants for committing acts of copyright infringement in violation of Federal Copyright Laws pursuant to 17 U.S.C. § 501. Defendants' acts deprived plaintiffs of their rights and privileges as secured under the Constitution and by the laws of the United States. That Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

1

2. This Court has in personam jurisdiction over the defendants by virtue of the strikingly similar nature of defendants' product to plaintiffs' properties (including but not limited to concept, content, structure, presentation and format) that could only have been obtained through access, actual or indirect, as described herein – thereby in satisfaction of the "minimal contact" standard.

3. This Court also has in personam jurisdiction pursuant to Article III, section 2 of the United States Constitution (U.S. CONT. art III, §2).

4. Plaintiff, CHRISTOPHER CASTORINA (hereinafter "Castorina" or "Plaintiff"), at all relevant times, was, and still is, a resident and domiciliary of the County of Suffolk, State of New York, specifically residing in Huntington, NY, 11743.

5. Plaintiff, STEVEN MORSE (hereinafter "Morse" or "Plaintiff"), at all relevant times, was and still is, a resident and domiciliary of the County of Suffolk, State of New York, specifically residing in Lake Grove, NY, 11755.

6. On information and belief, defendant Spike Cable Networks ("Spike") is a subsidiary and TV "brand" of defendant Network Enterprises, Inc. Defendant Network Enterprises, Inc. is a wholly owned subsidiary of defendant MTV Networks, which itself is wholly owned by defendant Viacom, Inc. Defendant Viacom, Inc. is a corporation that resulted from a split on or about December 2005 that resulted in two publicly traded companies, the "new" Viacom, Inc. and defendant CBS Corporation. (The original Viacom, Inc. changed its name to CBS Corporation.) All of said defendants regularly broadcast programs (and/or are responsible for broadcasting programs) that are aired in the State of New York. At relevant times, said defendants are responsible, jointly and severally, for the concept, content, structure, presentation and format of said broadcasted programs. At

all relevant times, defendants Spike, Network Enterprises, MTV Networks, Viacom, Inc. and CBS Corporation are also responsible for the production and distribution of broadcast materials.

7. On further information and belief, defendants Spike, MTV Networks, Network Enterprises, Viacom, Inc. and CBS Corporation, acting jointly and severally, violated the Copyright laws of the United States of America by broadcasting and otherwise utilizing the protected property of plaintiffs without their authorization.

8. Defendant Industry Entertainment, at all times relevant to this Complaint, was the talent agency which had access to plaintiffs protected and copyrighted treatment of their show before Spike aired their own analogous version of the same.

9. The defendants ABC Corporations 1-10 (said names being fictitious) and XYZ Corporations (said names being fictitious) are and were at all times relevant, corporations with the defendants and involved with said defendants' conduct against plaintiff.

10. The defendants ABC Talent Agencies 1-10 (said names being fictitious) and XYZ Talent Agencies 1-10 (said names being fictitious) are and were at all time relevant times, talent agencies connected with the defendants and involved with said defendants' conduct against plaintiff.

11. The defendants Talent Agents John Does 1-10 (said names being fictitious) and Talents Agents Jane Does 1-10 (said names being fictitious) are and were at all times relevant, talent agents connected with the defendants and involved with said defendants' conduct against plaintiff.

12. Defendants obtained actual access to the copyrighted intellectual property that is in the possession of plaintiff through one or several of various means: through electronic

3

transfer including, but not limited to, email, facsimile, internet and/or mel, delivery of physical copy or any combination thereof. Venue of the matter is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) as the claim arose from the broadcast of the defendants' product(s) in this district.

## FACTS

13. In or about 2004, plaintiffs, Christopher Castorina and Steven Morse, collaboratively created a treatment for a television show they entitled "Two Left Feet: A Sports Reality Show" (hereinafter "Two Left Feet").

14. Plaintiffs intended "Two Left Feet" to be a sports related reality television show that would depict average athletic amateurs competing against "real" (professional) athletes in a variety of sports. The series was meant to consist of various sporting events in which average yet athletic men would test their skills against professional athletes.

15. The plaintiffs' treatment included a delineation of numerous elements for the show, of which the following is a summary:

   a. The overall premise of the show – i.e. "To show that some men missed their calling as athletes and some men should stay home, content to yell at the TV during games";

   b. A process for the selection of athletic amateurs which would consist of tryouts: the tryouts themselves would focus on the athletic performances of fit, active men of varying ability, and final selections would be made based upon the particular temperaments, appearance, ability, etc. of the participants;

   c. An outline of the general framework of typical episodes for the show, detailing images, camera shots, etc. meant to convey the nervousness and intensity of the

men waiting for their chance to prove their skill against professional athletes, as well as the inclusion of short, interposed bios of the men selected and why they were picked;

d. A meticulous description of the personalities and backgrounds of two proposed hosts/judges/announcers (each being the polar opposite of the other in various respects) for the show, as well as a summary of the contributions they would make towards that show;

e. Plans for and descriptions of future episodes, which would include specific challenges for the competitors in basketball, hockey, tennis, soccer, boxing and football;

f. The idea that cash prizes be given to those amateur athletes who win competitions;

g. Specific ideas for a final episode of a first season.

16. (Further details in plaintiffs' treatment of "Two Left Feet" shall be noted below as appropriate).

17. Plaintiffs received Certificates of Registration from both the Writers Guild of America (April 6, 2004) and the Copyright Office (March 21, 2006) for "Two Left Feet". Importantly, the Certificate of Registration with the Writers Guild of America predates Spike's virtually analogous show "Pros vs. Joes".

18. Plaintiffs submitted their treatment for "Two Left Feet" to agents at Industry Entertainment as early as January, 2005 in hopes that the agency would secure them a contract with a major television network.

19. On March 6, 2006 Spike aired the series premiere of "Pros vs. Joes". "Pros vs. Joes", is a physical reality game show that continues to air on Spike. The show features male amateur contestants (the "Joes") competing against professional athletes (the "Pros", which are comprised mostly of retired male and female pro-athletes) in a series of athletic challenges related to the expertise sport of the Pro they are facing. (The show has had four seasons).

20. "Pros vs. Joes" has striking similarities to "Two Left Feet". Some obvious and important similarities between plaintiffs' protected copyrighted work and "Pros vs. Joes" include, *but are not limited to* the following:

   a. the portrayal of professional athletes vs. amateur sports fans in competition – e.g., Season 1, Episode 2 of "Pros vs. Joes", where the Joes try to tackle Ricky Williams (a professional football player) as explained in plaintiffs' treatment of Two Left Feet in detail;

   b. at least four of the same, identical sports (basketball, hockey, baseball, and football) utilized as the basis for the competition;

   c. the use of two judges/hosts/announcers of notably different personalities and backgrounds;

   d. the use of guest appearance by celebrity sports figures, and e) the use by Spike in the promotion of "Pros vs. Joes" of language virtually analogous to the language used in plaintiffs' copyrighted treatment.

21. More specific similarities between "Two Left Feet" and "Pros vs. Joes" include the following:

6

    a. At the beginning of "Pros vs. Joes", Season 1, the show starts off with a contest wherein the "Joes" attempt to field a ball hit by a professional baseball player (Matt Williams). This contest is analogous to the first episode detailed by plaintiffs in their treatment of "Two Left Feet" on pg. 3 of the treatment. ("Each player will get a chance to hit and field a ball set in motion by a professional athlete.")

    b. Episodes 2 and 3 include football contests where the "Joes" must catch a pass and run for a touchdown while being covered by a professional football player as described in page 5 in plaintiffs' treatment.

    c. Episode 3 also includes players attempting a layup against a pro basketball player as described in page 5 of plaintiffs' treatment.

    d. Episode 4 contains a hockey contest in which the contestants try to make a goal while having difficulty skating as described in page 5 of plaintiffs' treatment.

    e. The introduction to "Pros vs. Joes" includes the sudden and intense movement of professional sports, such as a shot between home plate showing how fast a pitch comes as well as other visuals listed in pg. 3 of plaintiffs' treatment.

    f. "Pros vs. Joes" also includes short bios of the players and why they were selected, as discussed in pg. 3 of plaintiffs' treatment.

22. The degree of similarities between "Pro vs. Joes" and "Two Left Feet" show that no theory of coincidence, simultaneous creation, prior common source or any explanation other than copying could reasonably account for the degree to which "Pros vs. Joes" resembles "Two Left Feet".

23. Although defendants had access to plaintiffs' treatment of "Two Left Feet" prior to airing the first episode of "Pros vs. Joes", plaintiffs have never been acknowledged for their collaborative origination of the show.

24. As a direct an proximate result of the wrongful conduct of defendants, jointly and severally, including the unauthorized use, production distribution and broadcast of plaintiffs' protected property pursuant to the Copyright laws of the United States, defendants have gained and continue to gain profits and other benefits that rightfully belong to the plaintiffs.

25. Defendants infringement upon plaintiffs' copyrighted property has caused and continues to cause significant damage to the plaintiffs that will persist unless defendants' conduct is immediately restrained

26. As a proximate cause and direct consequence of defendants' unauthorized utilization of plaintiffs' copyrighted property as described herein, plaintiffs' protected and lawful enjoyment of the rights and privileges of their artistic creation has been severely compromised.

27. As the lawfully registered owners of the concept, content, structure, presentation and format of creative product now used by defendants as their own, plaintiffs rightfully expected to reap the present and future monetary and commercial benefits of their collaborative efforts.

28. However, as a result of defendants' unauthorized utilization of plaintiffs' copyrighted property, plaintiffs suffer and continue to suffer loss of economic opportunity including the sale, re-sale, licensing, and otherwise use of the creative product from which defendants now reaps those benefits.

**WHEREFORE**, plaintiffs respectfully demand judgment against the defendants aforesaid, jointly and severally, for compensatory damages, punitive damages, together with interest, attorneys fees, and costs of suit and for such other and further relief as the Court deems equitable and just and:

i. Plaintiffs Christopher Castorina and Steve Morse demand that defendants aforesaid, jointly and severally, be immediately and permanently enjoined from copying, producing, distributing, broadcasting and otherwise infringing plaintiffs' copyrighted protected work.

ii. Plaintiffs Christopher Castorina and Steve Morse demand that defendants aforesaid, jointly and severally, be ordered to account to plaintiffs for all gains, profits and advantages derived by defendants by their infringement of plaintiffs' copyrighted protected work. As said infringement was intentional and deliberate, plaintiffs demand the maximum allowable statutory damages for each act in violation.

Dated: Huntington, New York
June 28, 2010

Respectfully Submitted,

By: _____
Donna D. Maio, Esq.
DeJesu Maio & Associates
191 New York Avenue
Huntington, New York 11743