UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
CHRISTOPHER CASTORINA and
STEVEN MORSE,

                    Plaintiffs,            <u>MEMORANDUM AND ORDER</u>
                                           10-CV-2954 (JS)(ARL)

          -against-

SPIKE CABLE NETWORKS, INC.,
ET AL.,

                    Defendants.
--------------------------------X
APPEARANCES
For Plaintiffs:    Donna Marie DeJesu-Maio, Esq.
                   DeJesu Maio & Associates
                   191 New York Ave
                   Huntington, NY 11743

For Defendants:    Elizabeth A. McNamara, Esq.
                   Monica Pa, Esq.
                   Davis Wright Tremaine, LLP
                   1633 Broadway
                   New York, NY 10019

SEYBERT, District Judge:

          Pending before the Court is Defendants' motion to

dismiss.  For the following reasons, this motion is GRANTED.

<u>BACKGROUND</u>

          This is a copyright infringement case.  In 2004,

Plaintiffs Christopher Castorina and Steven Morse pitched a

treatment for a sports-themed reality show entitled "Two Left

Feet," which they successfully copyrighted.  In 2006, Defendant

Spike Cable Networks, Inc. premiered a sports-themed reality

1

show called "Pros v. Joes."   Plaintiffs contend that "Pros v.

Joes" infringes on "Two Left Feet."   Defendants disagree.

Plaintiffs' treatment for "Two Left Feet" included the

following elements:

a. The overall premise of the show - i.e.,
"To show that some men missed their calling
as athletes and some men should stay home,
content to yell at the TV during games";

b. A process for the selection of athletic
amateurs which would consist of tryouts: the
tryouts themselves would focus on the
athletic performances of fit, active men of
varying ability, and final selections would
be made based upon the particular
temperaments, appearance, ability, etc., of
the participants;

c. An outline of the general framework of
typical episodes for the show, detailing
images, camera shots, etc., meant to convey
the nervousness and intensity of the men
waiting for their chance to prove their
skill against professional athletes, as well
as the inclusion of short, interposed bios
of the men selected and why were picked;

d. A meticulous description of the
personalities and backgrounds of two
proposed hosts/judges/announcers (each being
the polar opposite of the other in various
respects) for the show, as well as a summary
of the contributions they would make towards
the show;

e. Plans for and descriptions of future
episodes, which would include specific
challenges for the competitors in
basketball, hockey, tennis, soccer, boxing
and football;

f. The idea that cash prizes be given to
those amateur athletes who win competitions;

g. Specific ideas for a final episode of a first season.

(Compl. ¶ 15.)

Plaintiffs allege that "Two Left Feet" and "Pros v. Joes" share "striking similarities," including "but not limited to":

a. the portrayal of professional athletes v. amateur sports fans in competition . . . .;

b. at least four of the same, identical sports (basketball, hockey, baseball, and football) utilized as the basis for competition;

c. the use of two judges/hosts/announcers of notably different personalities and backgrounds;

d. the use of guest appearance by celebrity sports figures; and

e. the use by Spike in the promotion of "Pros v. Joes" of language virtually analogous to the language used in plaintiffs' copyrighted treatment.

(Compl. ¶ 20.)

Specific resemblances between Plaintiffs' "Two Left Feet" and "Pros vs. Joes" episodes include contests where contestants: (a) field a ball hit by a professional baseball player; (b) catch a pass while being covered by a professional football player; (c) attempt a layup against a professional basketball player; (d) try to score a goal in hockey. (Compl. ¶ 21.) In addition, both Plaintiffs' treatment and "Pros vs. Joes" include camera shots capturing "the sudden and intense

3

movement of professional sports," and "short bios of the players and why they were selected."  (Compl. ¶ 21.)

Plaintiffs allege that, due to these similarities, "no theory of coincidence, simultaneous creation, prior common source or any explanation other than copying" can account for why "Pros vs. Joes" resembles the "Two Left Feet" treatment. (Compl. ¶ 22.)  Thus, Plaintiffs seek relief for Defendants' alleged copyright infringement.

<u>DISCUSSION</u>

I.   <u>Standards of Review on a Motion to Dismiss</u>

    A.   <u>Legal Standard Under Rule 12(b)(6)</u>

In deciding FED. R. CIV. P. 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles," <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009).  First, although the Court accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Harris</u>, 572 F.3d at 72 (quoting <u>Ashcroft</u>); <u>Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC</u>, 595 F.3d 86, 91 (2d Cir. 2010).  Second, only complaints that state a "plausible claim

for relief" can survive Rule 12(b)(6).  <u>Id.</u>  Determining whether a complaint does so is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id.</u>

     B.   <u>Standard for Copyright Infringement</u>

        To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 117 (2d Cir. 2010). This, in turn, requires the plaintiff to demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's. <u>Peter F. Gaito Architecture, LLC v. Simone Development Corp.</u>, 602 F.3d 57, 63 (2d Cir. 2010).

        The "test for infringement of a copyright is of necessity vague." <u>Id.</u>[1]  Indeed, "[t]he determination of the extent of similarity that will constitute a <u>substantial</u>, and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." <u>Id.</u>  "For that reason, and because the question of substantial similarity typically

---

[1] For purposes of brevity, the Court omits all internal citations and quotation marks found within <u>Peter F. Gaito Architecture, LLC</u>.

presents an extremely close question of fact, questions of non-infringement have traditionally been reserved for the trier of fact." Id. But the "question of substantial similarity is by no means exclusively reserved for resolution by a jury," and "in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Id.

"These same principles hold true when a defendant raises the question of substantial similarity at the pleadings stage on a motion to dismiss." Id. at 64. "[I]n ruling on such a motion, a district court may consider the facts as asserted within the four corners of the complaint together with" the allegedly infringed and infringing works. Id. In so considering these works, "the works themselves supersede and control contrary descriptions of them," including "any contrary allegations, conclusions or descriptions of the works contained in the pleadings." Id. (citations and quotations omitted). Indeed, "[w]hen a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because what is required is only a visual comparison of the works." Id. (citations and quotations

6

omitted).   "If, in making that evaluation, the district court determines that the two works are not substantially similar as a matter of law, the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief."  Id.

C.   As Applied to Reality Television Programs

The Second Circuit has not yet had the opportunity to articulate how similar reality television programs must be for a "substantial similarity" to exist between them under the copyright laws.  But the Second Circuit's general framework for analyzing copyright claims is certainly insightful.  The Second Circuit sets forth that "[t]he standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same."  Id. at 66.  In applying the so-called "ordinary observer test," the Court should ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  Id.  When works have "both protectable and unprotectable elements," the Court "must attempt to extract the unprotectable elements from [its] consideration and ask whether the protectable elements, standing alone, are substantially similar."  Id.

7

That being said, the Court must focus on "the contested design's total concept and overall feel" in comparison to "the allegedly infringed work." Id. "This is so because the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art--the excerpting, modifying, and arranging of [unprotectible components] . . . are considered in relation to one another." Id. Thus, the "inquiry necessarily focuses on whether the alleged infringer has misappropriated the original way in which the author has selected, coordinated, and arranged the elements of his or her work." Id. To that end, there must be substantial similarity in the "expression of ideas," not just in "the ideas themselves." Id. at 67.

Accordingly, although stock concepts and "scènes à faire" are "unprotectable" in and of themselves, see Lapine v. Seinfeld, 375 Fed. Appx. 81, 83 (2d Cir. 2010), their "select[ion], coordinat[ion], and arrange[ment]," can be protectable, to the extent that it reflects a particular "expression of ideas." See generally Peter F. Gaito Architecture, LLC, 602 F.3d at 67. And if a work copies the "the original way in which the author has selected, coordinated, and arranged" these unprotectable elements to such an extent

that the copying work is substantially similar to the "expression of ideas" and "total concept and overall feel" of the copied work, infringement can occur. Id. at 66-67.

II. Application to Plaintiff's Complaint

Based on the Complaint, the parties' papers, and the exhibits subject to judicial notice,[2] the Court finds Plaintiffs' "Two Left Feet" treatment consists largely of stock concepts and "scènes à faire," such as fielding a baseball hit by a professional baseball player, and images depicting "panic, tension, relief, or failure." The treatment does augment these stock elements with various short phrases and slogans, such as the program's mission statement: "To show that some men missed their calling," and "some men should stay home, content to yell at the TV during games." But "it is axiomatic that words, short phrases, titles, and slogans are not subject to copyright, even if they can be trademarked." Lewinson v. Henry Holt and Co., LLC, 659 F. Supp. 2d 547, 568 (S.D.N.Y. 2009) (internal citations and quotations omitted).

Rather, the treatment's copyright protectability, if any, must--as Plaintiffs concede--flow from "the unique way the

---

[2] As noted above, the Court can consider "Pros vs. Joes" actual content in deciding Defendant's motion. See Peter F. Gaito Architecture, LLC, 602 F.3d at 65. But the Court's limited time has not permitted it to watch the episodes produced to date. Instead, the Court relies on the parties' descriptions of these episodes, and presumes that the attorneys' have, consistent with FED. R. CIV. P. 11, described their content accurately.

authors put together" various "stock ideas." (Pl. Opp. Br. at
8). But, contrary to Plaintiffs' further argument, this does
not mean that they own an enforceable copyright in the "basic
concept" of a sports reality show, even though the "value of an
unscripted program may lie almost entirely" in that idea. (Pl.
Opp. Br. at 10-11.) For "[i]t is a fundamental principle of our
copyright doctrine that ideas, concepts, and processes are not
protected from copying." Attia v. Society of New York Hosp.,
201 F.3d 50, 54 (2d Cir. 1999). Rather, consistent with Second
Circuit law, "Pros vs. Joes" infringes on "Two Left Feet" only
if it copied the "the original way in which the author has
selected, coordinated, and arranged" various elements to such an
extent that its "expression of ideas" and "total concept and
overall feel" was substantially similar to the "Two Left Feet"
treatment. See Peter F. Gaito Architecture, LLC, 602 F.3d at
66-67.

    Unfortunately for Plaintiffs, the "Two Left Feet"
treatment contains limited "original" "select[ion],
coordinat[ion], and arrange[ment]" of unprotectable elements.
Indeed, Plaintiffs concede as such. As Plaintiffs explain, the
Two Left Feet treatment "left certain specifics 'up in the
air,'" supposedly to show Plaintiffs' "flexibility." (Pl. Opp.
Br. at 3.) Thus, as drafted, Two Left Feet contained "some
ambiguity or lack of detail" as a "natural by-product" of

wanting "the sequences of events [to] be fluid to depend upon what the people in the show end up doing." (Pl. Opp. Br. at 13.) But the treatment's vagueness, however intentional, also undercuts its protectability, because--the less "specifics" and "detail" it contained, the less it uniquely and imaginatively "selected, coordinated and arranged" the stock elements contained within. Peter F. Gaito Architecture, LLC, 602 F.3d at 66-67.

Moreover, the treatment's choices in "select[ing], coordinat[ing] and arrang[ing]" stock elements are largely inherently functional to the idea of a sports reality show, not "original" creative expressions of any particular idea. Id. In this regard, the Court noted that Two Left Feet's supposed "striking similarities" (Compl. ¶ 20) with "Pros vs. Joes" consist of selecting stock elements such as "the portrayal of professional athletes vs. amateur athletes in competition," "short bios of the players and why they were selected," and footage capturing the "sudden and intense movement of professional sports." (Compl. ¶¶ 20, 21; see generally supra at 2-3.) But, as the District of New Jersey explained, in dismissing a similar complaint brought by a different plaintiff who sought credit for "Pros vs. Joes":

> The presence of hosts who provide witty commentary on the contestants and competition, introductory sequences that feature highlights of

11

sporting events and sounds associated with various sports, spotlights on professional athletes and amateur contestants, camera shots of athletic fields or arenas, trash-talking exchanges, and sports contests <u>are scenes á faire that flow necessarily from the idea of a sports-themed reality show that pits amateurs against professional athletes</u>.

<u>See</u> <u>Pino v. Viacom, Inc.</u>, 07-CV-3313, 2008 WL 704386, at *5 (D.N.J. March 4, 2008) (emphasis supplied).

"Two Left Feet" treatment's selection of popular sports, such as baseball, football, and basketball also falls into this category. (Compl. ¶¶ 20, 21) (alleging a "striking similarit[y]" in the use of "identical sports"). Indeed, it is difficult to fathom a sports reality program designed for the American television market that, instead of featuring these sports, would instead pit amateur Americans against professional camel jockeys, cricketers, and haggis hurlers. Similarly, there is nothing protectable in the "Two Left Feet" treatment's decision to express scenes of "panic, tension, relief or failure," using the functional device of "quick shots," instead of, presumably, footage depicting the contestants leisurely chewing tobacco, lounging on the bench, or scratching themselves.

That being said, the "Two Left Feet" treatment does, to a small extent, select, coordinate and arrange <u>some</u> stock

elements in creative, non-purely functional ways.  For instance, the Two Left Feet treatment supplements the real amateur competitors with a few "goofballs" for "comic relief of course," and "a few ringers to make the other guys envious and competitive."  Likewise, the treatment describes one host as an "ex law enforcement officer, federal agent, with a masters degree in Social Work," who would use this background to "manipulate" the other host, a "biochemist with a cool analytical nature, yet a vicious temper," and who would focus on analyzing competitors using various scientific parameters, such as "bodyfat" and other statistics.  Additionally, the treatment suggests "test[ing]" the competitors "for well-roundedness by forcing them to sing ala American Idol."  Finally, the hosts themselves will principally judge the contestants using their own subjective beliefs and ability to persuade the other host, although an "independent panel of sports experts" would replace them for the final episode.

Unfortunately for Plaintiffs, they do not allege that "Pros vs. Joes" contains any of these artistic, potentially original choices in selection, coordination, or arrangement. Plaintiffs do not, for instance, allege that "Pros vs. Joes" spiked the real contestant pool with "goofballs" and "ringers." Nor do Plaintiffs plead that "Pros vs. Joes" required contestants to "sing ala American Idol."

13

More to the point, Plaintiffs' treatment, at its most creative and artistic level, focused heavily on the "Good and Evil" dynamic between the co-hosts of drastically different backgrounds and outlooks, with the former "federal agent" judging players based on "intuition" and "instinct," while the "biochemist" uses "scientific evaluation." According to the treatment, Plaintiffs intended the "federal agent" character to "fight for the common man," while the "biochemist" character becomes someone for the viewer "to despise . . . a definable person to resent and blame their problems on." But Plaintiffs do not allege that "Pros vs. Joes" utilized any of these creative choices. Nor could they. "Pros vs. Joes" used only a single host in Seasons 1, 2, and 3. (Pl. Opp. Br. at 16.) And, although "Pros vs. Joes" used two hosts in Season 4, from the parties' descriptions, it appears quite clear that neither remotely resembles either the "federal agent" who "fights for the common man," or the "biochemist" intended as a target for viewer scorn. Instead, "Pros vs. Joes" employed a professional athlete and a well-known sports journalist as hosts, with the athlete figuratively representing the "Pros," and the journalist figuratively representing the "Joes." Finally, the "Two Left Feet" treatment envisioned the hosts doubling as judges, with the hosts' entertaining squabbles deciding which contestants advanced. Each "Pros vs. Joes" season, on the other hand,

14

judged contestants using an objective points system, such as the number of baskets scored, that did not rely on the hosts' subjective beliefs or argumentative skills.

Various other factors strongly weigh against any suggestion of substantial similarity. In Plaintiffs' treatment, the amateurs compete against professional athletes in just that professional's sport (i.e., trying to score a goal on NHL goalie Chris Osgood). "Pros vs. Joes" includes segments that depict that basic match-up, but then augments it with rounds that place a "twist" on popular sports (i.e., shooting a basketball from a conveyer belt), or which place the "Pros" in unfamiliar sports (i.e., professional basketball players competing against amateurs in golf). Finally, each "Pros vs. Joes" season used an entirely different format than "Two Left Feet"'s elimination system.[3]

It follows then that, even after affording Plaintiffs every benefit they are entitled to under FED. R. CIV. P. 12(b)(6), their Complaint fails to state any cognizable claims. Both "Two Left Feet" and "Pros vs. Joes" contain the basic idea of amateur

---

[3] The "Two Left Feet" treatment envisioned a pool of contestants appearing in each episode, and gradually being eliminated, in some unspecified format. The first two "Pros vs. Joes" seasons had different contestants every episode. Season 3 used an elimination format, but one dramatically different than "Two Left Feet"'s, as it involved different contestants in each episode, with each episode's champion returning for the season finale. In Seasons 4 and 5, contestants competed in teams.

athletes trying to prove their worth against professionals. But, to the extent that "Two Left Feet" expresses that idea in a protectable fashion, its expression does not remotely resemble the expression found in "Pros vs. Joes." See Peter F. Gaito Architecture, LLC, 602 F.3d at 66-67. As a consequence, no objective observer could conclude that "Two Left Feet" and "Pros vs. Joes" share a substantially similar "total concept and overall feel." Id. Accordingly, Plaintiffs' Complaint must be DISMISSED.

## CONCLUSION

Defendants' motion to dismiss is GRANTED. The Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    March ___24___, 2011
          Central Islip, New York

16